IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |
|---|---|
| **Virginia Electric and Power Company, d/b/a Dominion Energy Virginia; OSW Project LLL**, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. Department of the Interior, et al.**, <br><br> Defendants. | Case No. 2:25-cv-830 (JKW/LRL) |

### Federal Defendants' Opposition to
### Plaintiffs' Motion for Temporary Restraining Order

#### Introduction

Plaintiffs' motion for a temporary restraining order should be deferred or denied and the parties should proceed to briefing a motion for a preliminary injunction. Plaintiffs have not demonstrated that irreparable harm will materialize during the period that would be necessary for the parties to brief and for the Court to decide the latter motion. Further, in issuing the suspension order that Plaintiffs challenge, the Bureau of Ocean Energy Management relied on classified information from the Department of War. Undersigned counsel understands that the information has at least a "secret" designation. Thus, at a minimum, the Court should defer deciding whether any preliminary relief is appropriate until the Department of Justice can present that information to the Court and the Court can properly weigh the governing factors, including the public interest. The intervening holidays have made the necessary coordination difficult, but we anticipate that the

1

Court would be able to review the classified information during the week of January 5. Plaintiffs' attempted showing under the remaining factors for a temporary restraining order do not outweigh these considerations.

## BACKGROUND

**I.     Wind Energy Development on the Outer Continental Shelf**

This case involves a wind energy project on the Outer Continental Shelf (OCS). The OCS consists of the submerged lands beneath the ocean, generally from 3 to 200 miles seaward of the coastline. *Ctr. for Biological Diversity v. Jewell*, 563 F.3d 466, 472 (D.C. Cir. 2009); 43 U.S.C. § 1331(a). Under the Outer Continental Shelf Lands Act (OCSLA), the United States holds these lands as a "vital national resource reserve" that "should be made available for expeditious and orderly development, subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and *other national needs*." *Id.* § 1332(3) (emphasis added).

Department of the Interior approvals related to wind energy development on the OCS are governed by OCSLA and Interior's implementing regulations. *See* 43 U.S.C. § 1337(p)(1)(C) (authorizing the Secretary of the Interior to "grant a lease, easement, or right-of-way" for activities that "produce or support production, transportation, storage, or transmission of energy from sources other than oil and gas"); *id.* § 1337(p)(5) ("The Secretary shall provide for the duration, issuance, transfer, renewal, suspension, and cancellation of a lease, easement, or right-of-way under this subsection."); *id.* § 1337(p)(8) (authorizing the Secretary to "issue any necessary regulations to carry out this subsection"); *see also id.* § 1334(a) ("The Secretary shall administer the provisions of this subchapter relating to the leasing of the outer Continental Shelf, and shall prescribe such rules and regulations as may be necessary to carry out such provisions.").

In granting Interior that authority, Congress directed that "[t]he Secretary shall ensure that any activity under this subsection is carried out in a manner that provides for" multiple criteria.

*Id.* § 1337(p)(4). Among them is "protection of national security interests of the United States." *Id.* § 1337(p)(4)(F). Interior regulations delegate to the Bureau of Ocean Energy Management (BOEM) the responsibility to implement § 1337(p)(4). *See* 30 C.F.R. § 585.102(a).

Under BOEM's renewable energy regulations and lease terms, a lease issued under OCSLA does not itself authorize development. 30 C.F.R. § 585.200(a). A lessee must first assess the site, obtain BOEM's approval of a site assessment plan, and obtain BOEM's approval of a Construction and Operations Plan (COP). 30 C.F.R. §§ 585.600, 585.605–585.613, 585.620–585.628.

## II. The Coastal Virginia Offshore Wind Project and Suspension Order

The Coastal Virginia Offshore Wind (CVOW) Project is an offshore wind energy project planned for Lease Area OCS-A 0483, an area approximately 27 miles east of Virginia Beach. BOEM issued a Record of Decision in October 2023, documenting its intent to approve the COP for the Project. BOEM issued its COP approval conditions in January 2024. Since that time, the Project has been in different phases of construction.

In January 2025, the President issued a Presidential Memorandum entitled, "Temporary Withdraw of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects." 90 Fed. Reg. 8363 (Jan. 20, 2025) ("Presidential Wind Memo"). Section 1 of that Memorandum instructs the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases." *Id.* The review directed by Section 1 of the Presidential Wind Memo prompted Interior to review the CVOW Project, as approved. *See* Decl. of Matthew Giacona ¶ 8 ("Giacona Decl.").

As part of the review for the CVOW Project, "[i]n November 2025, the Department of War (DoW) completed an additional assessment regarding the national security implications of offshore wind projects, and provided senior leadership at the Department of the Interior with new classified

3

information, including the rapid evolution of relevant adversary technologies and the resulting direct impacts to national security from offshore wind projects." Letter from Matthew Giacona to Joshua J. Bennett (Dec. 22, 2025) ("the Order"), Ex. A to Giacona Decl. Thus, given the Project's location and "[b]ased on BOEM's initial review of the classified information," BOEM issued an order, "pursuant to 30 C.F.R. § 585.417(b), to suspend all ongoing activities related to the [Project] on the Outer Continental Shelf for the next 90 days for reasons of national security." *Id.* For further background, Interior has also provided the attached declaration from the Acting BOEM Director. *See* Giacona Decl.

### STANDARD OF REVIEW

"While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999).

That temporal consideration aside, the standard for issuance of a temporary restraining order is the same as that for a motion for a preliminary injunction. *See Moore v. Kempthorne*, 464 F.Supp.2d 519, 525 (E.D. Va. 2006). The relief is "an extraordinary and drastic remedy" that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The movant bears the "heavy burden" of making a "clear showing" that it satisfies four factors: (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Id.* at 20. Failure to satisfy any one factor precludes relief. *Henderson ex rel. NLRB v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018). The latter two factors merge when preliminary relief is sought against the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

4

ARGUMENT

I.  **Plaintiffs Have Not Shown an Irreparable Harm that Warrants a Temporary Restraining Order**

For at least three reasons, Plaintiffs have not met their burden to show irreparable harm. *First*, because Plaintiffs seek a temporary restraining order, they must show that they will suffer irreparable harm *before* the Court could resolve a motion for a preliminary injunction. *See Hoechst Diafoil*, 174 F.3d at 422. A preliminary injunction motion could likely be briefed and resolved by mid-to-late-January. But Plaintiffs have not attempted to show that irreparable harm would occur during those three to four weeks, instead focusing on harms that could occur during the duration of the Order. *See* Pls.' Mem. in Supp. of Mot. for Temp. Restraining Order 14–17, Dkt. No. 11-1 ("Pls.' Mem.").

*Second*, Plaintiffs cannot rely on alleged delay-based harms to potential energy customers or the State of Virginia's interest in the Project. *See* Pls.' Mem. at 15–16. That is because the harm must be *to the plaintiff*. *Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish … *that he is* likely to suffer irreparable harm[.]" (emphasis added)).

*Third*, Plaintiffs have not cleared the very high bar to establish irreparable harm from purely economic injuries. *See* Hollett Decl. ¶¶ 33–37. To be sure, the alleged amounts involved are large. But financial losses alone do not typically constitute irreparable injury. *See, e.g., Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." (citation omitted)); *O'Brien v. Appomattox Cnty.*, 213 F. Supp. 2d 627, 631 (W.D. Va. 2002), *aff'd*, 71 F. App'x 176 (4th Cir. 2003) ("[G]enerally, a mere economic injury, standing alone, is insufficient to show an irreparable harm." (citations omitted)). A party *can* show irreparable harm from purely economic harms where "the anticipated economic injury is of such severity that the company will be put out

5

of business altogether." *Montgomery Cnty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 783 F. Supp. 952, 958 (D. Md. 1992), a*ff'd*, 993 F.2d 1538 (4th Cir. 1993) (citing *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 500 (4th Cir.1981) (when company "sought to preserve its existence," appellate court found no error in district court's granting of injunction)). Similarly, economic injuries may be irreparable where the losses are not recoverable. *N. Carolina Growers' Ass'n v. Solis*, 644 F. Supp. 2d 664, 671 (M.D.N.C. 2009) ("While it is beyond dispute that economic losses generally do not constitute irreparable harm, this general rule rests on the assumption that economic losses are recoverable." (citing cases)). But Plaintiffs have not made either showing for purposes of a temporary restraining order.

As to the severity of the economic harm, Plaintiffs' alleged harms are largely focused on increased costs. *See* Hollett Decl. ¶¶ 33–37. Plaintiffs' primary case—*Mountain Valley Pipeline LLC v. 6.56 Acres of Land*, 915 F.3d 197 (4th Cir. 2019), *see* Pls.' Mem. 16—indicates that their showing here is insufficient. For one, *Mountain Valley* involved motions for partial summary judgment and preliminary injunction, not a temporary restraining order, *id.* at 210, so the temporal period for the relevant injury was not limited to the time necessary to resolve a preliminary injunction motion, *see id.* at 211 (district court estimated the time necessary to resolve the proceedings could take more than three years).

*Mountain Valley* is also distinguishable on the facts. There, the utility company sought to build a natural gas pipeline, and the certificate of public convenience and necessity issued by the Federal Energy Regulatory Commission (FERC) required that the pipeline be in service by a date certain. *Id*. at 208–09. The case concerned eminent domain proceedings, where the utility sought to acquire rights of way from property owners who had not reached agreement with the utility on easement purchase prices. *Id.* at 210. The utility sought a preliminary injunction granting the

6

easements immediately so it could complete the pipeline installation before the deadline set by FERC. *Id*. Three separate district courts granted the injunctions sought. *Id*. at 211.

*Mountain Valley* held that the district courts' preliminary injunctions were neither clear error nor an abuse of discretion. *Id*. at 216. The key factor in the court's view was that "it is undisputed that without preliminary relief, Mountain Valley almost certainly would be unable to meet FERC's October 2020 in service deadline." *Id.* "The combined effect is that without a preliminary injunction, Mountain Valley likely would lose the right to construct the pipeline altogether—an outcome that qualifies as an irreparable injury[.]" *Id*. at 217. In reaching this conclusion, *Mountain Valley* relied on an earlier decision in *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004), which presented the same fact pattern.

But here, Plaintiffs' harms relate primarily to increased costs associated with delayed development. And delayed development does not amount to irreparable harm. *See Lost Lake Holdings LLC v. Town of Forestburgh*, No. 22-cv-10656, 2023 WL 8947154, at *8 (S.D.N.Y. Dec. 28, 2023).

As to recoverability, whether any economic loss resulting from a federal government action is recoverable as monetary damages would depend on the nature of the action and any future claim. If Plaintiffs are correct in their telling (Mem. at 21–22) that the suspension order here arises under 43 U.S.C. § 1341(c)—which we do not concede at this stage—the provision explicitly provides for the recovery of "just compensation." *See* 43 U.S.C. § 1341(c) ("[A]ll such leases shall contain or be construed to contain provisions for the payment of just compensation to the lessee whose operations are thus suspended."). But even unrecoverable economic harm would not necessarily create *per se* irreparability. *See Scotts Valley Band of Pomo Indians v. Burgum*, No. 1:25-cv-958,

7

2025 WL 1639901, at *5 (D.D.C. June 10, 2025). The harm would still likely need to be "enormous and severe." *Id.* (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 221 (1994) (Scalia, J., concurring)). And the burden to show irreparable harm rests with Plaintiffs. The Court should deny Plaintiffs' motion, and the parties should turn to briefing a motion for preliminary injunction.

## II. Plaintiffs Have Not Shown a Likelihood of Success on the Merits

Plaintiffs have also not shown at this stage that they are likely to succeed on the merits of their claims. Plaintiffs seek emergency relief based primarily on their claims under the Administrative Procedure Act (APA).[1] *See* Pls.' Mem. 18–28. Judicial review under the APA "is highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envt'l Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). "Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 145 S. Ct. 1497, 1511 (2025) (citing *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)); *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). The court may not substitute its judgment for that of the agency and must uphold a decision of less-than-ideal clarity if the agency's path may reasonably be discerned. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

Plaintiffs argue that BOEM acted contrary to law because OCSLA and its implementing regulations do not authorize, and the lease prohibits, the Order (Pls.' Mem. 18–24), and that BOEM acted arbitrarily and capriciously because the Order was not reasonably explained and was contrary

---

[1] Plaintiffs refer to the OCSLA provision allowing those with a valid legal interest to compel compliance with a regulatory provision or lease term. Pls.' Mem. 28 (citing 43 U.S.C. § 1349(a)(1)). But Plaintiffs' complaint is based upon BOEM taking an action allegedly in violation of OCSLA and the lease. It is not a claim to compel compliance. Plaintiffs' motion does not address their due process claims.

to the evidence before the agency (Pls.' Mem. 24–28). Plaintiffs showing is insufficient to warrant a temporary restraining order.

*First*, BOEM regulations explicitly set forth the authority to issue the Order: "BOEM may order a suspension … [w]hen the suspension is necessary for reasons of national security or defense." 30 C.F.R. § 585.417(b).

Plaintiffs argue that OCSLA Section 12(c), 43 U.S.C. § 1341(c), prohibits the suspension because BOEM did not rely on a request from the Secretary of War and there is no applicable national emergency or declaration of war. *See* Pls.' Mem. 21–23. But § 1341(c) is not the sole source of statutory authority related to national security issues. *See* 43 U.S.C. § 1337(p)(4)(F) ("The Secretary shall ensure that any activity under this subsection is carried out in a manner that provides for … protection of national security interests of the United States"); *see also id.* § 1337(p)(5) ("The Secretary shall provide for the duration, issuance, transfer, renewal, suspension, and cancellation of a lease, easement, or right-of-way under this subsection."). Indeed, OCSLA allows the Secretary to *cancel* leases for national security reasons. *See* 43 U.S.C. § 1334(a)(2)(A)(i). It would be incongruous with this statutory scheme to assume Congress meant to withhold the lesser authority to suspend leases for national security reasons.

Plaintiffs also argue that BOEM did not follow the suspension procedures for violations of any COP approval conditions, or those for revising a COP. Pls.' Mem. 20–21. But Plaintiffs themselves acknowledge that COP compliance is not the issue here. *See* Pls.' Mem. 20. And BOEM has not directed any COP revisions.

*Second*, the Order adequately stated its bases. The Order explained that the Department of War had provided the Department of the Interior with classified information, that the information relates to advances in adversary technologies, and that those advances could raise national security

issues with offshore wind projects. *See* Order. There is no APA problem with this "reasonable, albeit brief" explanation. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 175 (2007). Even more given that the information at issue here is classified. Giacona Decl. ¶¶ 10, 15.

*Third*, Plaintiffs have not shown that the Order was contrary to the information before the agency. This issue will turn on the Court's assessment of the classified information, which Federal Defendants have not yet been able to provide to the Court. But it is Plaintiffs' burden to show a likelihood of success on the merits. Plaintiffs' reference to BOEM's previous considerations of national security issues is irrelevant—the Order makes clear that BOEM is relying on new information. *See* Order.

Plaintiffs' reliance on the change-in-position doctrine is also misplaced. *See* Pls.' Mem. 24–25. The doctrine permits agencies to change existing policies so long as they recognize the change, reasonably explain it, and consider serious reliance interests. *FDA v. Wages & White Lion Inv., LLC*, 145 S. Ct. 898, 917 (2025). The doctrine "asks two questions." *Id.* at 918. The first is whether the agency has in fact changed its position by, for example, acting inconsistently with a prior position or reversing a former view "as to the proper course." *Id.* (citation omitted). If that first question is answered in the affirmative, the second question asks whether the agency recognized it was changing its position and explained the new policy. *Id.* (citation omitted). But BOEM has not changed any position with respect to CVOW. The suspension is based upon the receipt of *new* information. And BOEM has not rescinded or modified the lease or the prior approval of the COP. Thus, contrary to Plaintiffs' contention (Pls.' Mem. 26–27), BOEM was not required to consider reliance interests. Any need to consider reliance interests is a part of the change-in-position doctrine. *Wages & White Lion*, 145 S. Ct. at 917 (citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016)).

Nor are Plaintiffs correct that BOEM failed to consider an important aspect of the problem. *See* Pls.' Mem. at 27. Plaintiffs do not point to any statutory or regulatory factor that BOEM had to consider but did not. The Executive Orders on which Plaintiffs rely state that they do not create any rights or obligations. *See* Exec. Order No. 14102, *Unleashing Prosperity through Deregulation*, 90 Fed. Reg. 9065, 9067 (Feb. 6, 2025) ("This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."); Exec. Order No. 14219, E*nsuring Lawful Governance and Implementing the President's Department of Government Efficiency Deregulatory Initiative*, 90 Fed. Reg. 10583, 10585 (Feb. 19, 2025) (same).

*Fourth*, Plaintiffs are incorrect that the order contravenes 5 U.S.C. § 558(c). As Plaintiffs state (Pls.' Mem. 23), that section does not allow suspension of a license without certain procedural protections, *except* where necessitated by "public health, interest or safety." 5 U.S.C. §558(c). As BOEM explained here, the suspension resulted from the Department of War's recent "assessment regarding the national security implications of offshore wind projects." Order. Interior was provided with "new classified information, including [about] the rapid evolution of relevant adversary technologies and the resulting direct impacts to national security from offshore wind projects" that "are heightened by the projects' sensitive location on the East Coast and the potential to cause serious, immediate, and irreparable harm" to the country. *Id*. The "national security threats relating to this project," BOEM concluded, can only be averted by suspending lease activities pending review of possible mitigation measures.[2] *Id*.

---

[2] Plaintiffs cite *New York v. Trump*, No. 25-CV-11221-PBS, 2025 WL 3514301 (D. Mass. Dec. 8, 2025), but that decision nowhere discusses Section 558's license suspension provision.

11

*Sixth*, any claim that BOEM has violated the lease is a breach of contract claim over which the Court lacks jurisdiction. Plaintiffs rely on the APA's waiver of sovereign immunity. *See* Compl. ¶ 8. But the APA's waiver does not apply where "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; *see also id.* § 704 (APA only available to challenge "final agency action for which there is no other adequate remedy in a court."). The Tucker Act waives sovereign immunity for suits against the United States alleging a breach of contract, placing jurisdiction exclusively in the Court of Federal Claims for any claim more than $10,000. 28 U.S.C. § 1491(a)(1). Where "a plaintiff has an adequate remedy by suit under the Tucker Act, they are precluded from review under the APA." *Coleman v. Kendall*, 74 F.4th 610, 615 (4th Cir. 2023) (cleaned up). Plaintiffs have not shown a likelihood of success on the merits of their case.

### III. The Balance of Harms and Public Interest Favor Considering the Issues on a Motion for Preliminary Injunction

The balance of harms and public interest weigh in favor of the Court denying or deferring the TRO motion in favor of a reasonable schedule for briefing a motion for preliminary injunction. BOEM based its order on classified national security information from the Department of War. *See* Order; Giacona Decl. ¶¶ 10, 15. In weighing questions of preliminary injunctive relief, courts must "give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008) (citation omitted).

As explained above, Plaintiffs' alleged harms, by contrast, are economic in nature. Plaintiffs have not shown that, even if those harms could be irreparable, they would reach that point before the parties could brief—and the Court could decide—a preliminary injunction motion. And while the other public interest factors Plaintiffs raise may be important, the Court could ultimately

conclude that the national security interests outweigh them. *See, e.g., Winter*, 555 U.S. at 24–26 (weighing competing harms and concluding that "[t]he public interest in conducting training exercises with active sonar under realistic conditions plainly outweighs the interests advanced by the plaintiffs"). Indeed, Plaintiffs have based their harms, in part, on costs associated with demobilization and remobilization. A temporary restraining order (allowing remobilization) followed by denial of preliminary injunction (requiring demobilization again) would presumably only add to those harms.

Thus, under the circumstances, the appropriate course would be for the Court to ensure that it has considered the classified national security information on which BOEM relied to issue the Order before it takes the extraordinary step of issuing preliminary relief. Federal Defendants request that their response to any preliminary injunction motion be due January 9 or fourteen days after Plaintiffs' motion, whichever comes later. That will allow the Department of Justice to follow the necessary procedures to facilitate the Court's review of the classified information.

## Conclusion

Balancing the harms associated with Plaintiffs' request for emergency relief will require the Court to consider classified information. The Court should therefore defer or deny Plaintiffs' present motion and direct the parties to brief a motion for a preliminary injunction, which will allow the Court the opportunity to review the classified information. Plaintiffs have not shown that any irreparable harm will materialize in the interim. And none of the other factors counsel in favor of a different outcome.

December 27, 2025

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

PETER M. TORSTENSEN, JR.
Deputy Assistant Attorney General

*s/ Kristofor R. Swanson*
KRISTOFOR R. SWANSON (Colo. No. 39378)
Assistant Chief
*s/ Frank J. Singer*
FRANK J. SINGER (Cal. Bar No. 227459)
Senior Litigation Counsel
*s/ Peter Kryn Dykema*
PETER KRYN DYKEMA
Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 598-1937 (Swanson)
Telephone: (202) 598-0404 (Singer)
Telephone: (202) 532-3084 (Dykema)
kristofor.swanson@usdoj.gov
frank.singer@usdoj.gov
peter.dykema@usdoj.gov

LINDSEY HALLIGAN
U.S. ATTORNEY AND SPECIAL ATTORNEY

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

ROBERT K. MCBRIDE
FIRST ASSISTANT U.S. ATTORNEY

/s/ *Kent P. Porter*
KENT P. PORTER, VSB No. 22853
Supervisory Assistant U.S. Attorney
Office of the United States Attorney
8000 World Trade Center
101 W. Main Street
Norfolk, Virginia 23505
Tel:   (757) 441-6331
Fax:   (757) 441-6689
Email: kent.porter@usdoj.gov