IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| VIRGINIA ELECTRIC AND POWER COMPANY, D/B/A DOMINION ENERGY VIRGINIA; OSW PROJECT LLC,<br>        Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; BUREAU OF OCEAN ENERGY MANAGEMENT; DOUGLAS BURGUM, Secretary of the Interior, in his official capacity; MATTHEW GIACONA, Acting Director, Bureau of Ocean Energy Management, in his official capacity,<br><br>        Defendants. | Case No. 2:25-cv-00830 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF DECEMBER 28, 2025 ORDER; PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1
I.     DEV's Harms Warrant a TRO. ............................................................................... 1
II.    The Merits of DEV's Claims Warrant a TRO. ............................................................. 4
III.   The Remaining Factors Warrant a TRO. .................................................................... 9
CONCLUSION.......................................................................................................................... 10

**INTRODUCTION**

BOEM posits that it can abruptly suspend construction on the CVOW lease it issued a dozen years ago, and of a project fully approved two years ago, simply via its Acting Director waving a single piece of paper invoking the words "national security" based on unspecified "new" information all of which is "classified" as "secret." Having orchestrated this untenable scenario, the government, after issuing BOEM's Order on December 22, 2025, now avers it should continue for at least two more weeks because the holiday season renders it too inconvenient for the government to present this information in any manner, let alone to the Court or anyone at Dominion Energy Virginia (DEV) with security clearances. BOEM's opposition fails to address many of, much less rebut, the arguments and evidence in DEV's motion. The immense daily harms BOEM is inflicting on DEV and other present circumstances necessitate a temporary restraining order (TRO) now.

Accordingly, DEV also respectfully requests that the Court reconsider its December 28, 2025 Order (ECF No. 22) that would defer any needed relief until at least January 16, 2026; either re-calendar its TRO hearing scheduled for December 29, 2025, or grant a TRO on the filed papers; accelerate the government's deadline to provide any classified information; and provide for sharing of that information with DEV officials or counsel with requisite clearances. DEV does not oppose the other briefing deadlines or hearing date in the Court's December 28 Order.

**I.      DEV'S HARMS WARRANT A TRO.**

DEV provided detailed evidence of its harms from BOEM's Order. *See generally, e.g.*, Hollett Affidavit (H.A.) (ECF No. 11-2). BOEM's opposition ignores and does not dispute those harms. BOEM further concedes that even solely economic harms (which do not fully describe the harms for DEV as a regulated public utility) that are immediate, severe, and unrecoverable support a TRO. Opp. 5-6.

1

Such harms exist here.  BOEM disregards that DEV *already* is incurring *millions* of dollars *per day* from the Order's idling of vessels, equipment, and personnel, and derivative delays in the carefully calibrated overall project schedule.  H.A. ¶ 35.  BOEM's admission that "the alleged amounts involved are large" is an understatement.  Opp. 5.  Its single, out-of-Circuit citation does not stand for the absolutist proposition that "delayed development does not amount to irreparable harm" (Opp. 7); that case found no irreparable harm from state-level environmental review delays occasioned by additional building applications "without more," and pointed to (unlike here) the availability of "monetary damages after a trial on the merits."  *Lake Holdings LLC v. Town of Forestburgh*, No. 22-10656, 2023 WL 8947154, at *8 (S.D.N.Y. Dec. 28, 2023).  *Lake Holdings* is inapposite to the facts here.  Similarly, BOEM's attempt to distinguish *Mountain Valley Pipeline LLC v. 6.56 Acres of Land* falls flat as that case, apart from a missed deadline, also considered the financial losses of delay alone and the inability to recover such losses as supporting irreparable harm.  915 F.3d 197, 217-19 (4th Cir. 2019).  Equally misplaced is BOEM's citation to *East Tennessee Natural Gas Co. v. Sage*, which turned on not only risk of a missed deadline but also "other irreparable harm such as increased construction costs and losses from its breach of gas supply contracts."  361 F.3d 808, 830 (4th Cir. 2004).

In any event, BOEM ignores myriad contractual and regulatory deadlines CVOW faces to keep project construction on schedule.  Its arguments also ignore that DEV is a public service company with an obligation to serve.  Further, DEV bears the risk of increased costs until the Virginia State Corporation Commission finds those costs incurred, or to be incurred, are reasonable and prudent and approved for recovery from ratepaying customers.  *See* Va. Code §§ 56-585.1 A 6, D; 56-585.1:11 C.1; *see also Sage*, 361 F.3d at 829-30 (harm analysis for energy infrastructure developer encompassed "negative impacts on its customers and the

consumers they serve"). Moreover, for CVOW, the Virginia State Corporation Commission imposed a cost sharing mechanism for CVOW's costs under which DEV and ratepaying customers have a 50/50 percent share of approved project costs between $10.3 and $11.3 billion, and ratepaying customers do not bear any costs between $11.3 and 13.7 billion.[1] The current project investment is $11.2 billion. H.A. ¶ 10.

As to non-recoverability of DEV's harms, BOEM does not address the United States' sovereign immunity to monetary damages claims. *See* ECF No. 11-1 at 16-17. Though BOEM (like DEV) cites the "just compensation" clause in 43 U.S.C. § 1341(c)(1) for national security-based suspensions, BOEM neither concedes its applicability in lieu of sovereign immunity nor explains how it would cover all of DEV's harms. *See* Opp. 8; ECF No. 11-1 at 22. Moreover, BOEM's own cited cases involve harm that the court found was compensable with money damages. Opp. 5-6.[2] "This case is different, because here, [Plaintiffs'] economic losses would *not* be recoverable at the end of litigation." *See Mountain Valley*, 915 F.3d at 218 (emphasis in original).[3]

---

[1] Va. State Corp. Comm'n, *Application of Virginia Elec. and Power Co. for approval and certification of the Coastal Virginia Offshore Wind Commercial Project and Rider Offshore Wind, pursuant to § 56-585.1:11, § 56-46.1, § 56-265.1 et. seq., and § 56-585.1 A 6 of the Code of Virginia*, Case No. PUR-2021-00142, Order on Reconsideration at 5-6, Att. A at 11-12 (Dec. 15, 2022), https://www.scc.virginia.gov/docketsearch/DOCS/7pj901!.PDF.

[2] In *Di Biase*, the sentence of the opinion after the one cited by the government refers to "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date," *De Biase v. SPX Corp*, 872 F.3d 224, 230 (4th Cir. 2017), and cites to *Sampson v. Murray*, 415 U.S. 61, 90 (1974), a case that refers to "the temporary loss of income, ultimately to be recovered." *O'Brien* likewise refers to "the opportunity to recover money damages," *O'Brien v. Appomattox Cnty.*, 213 F. Supp. 2d 627, 631 (W.D. Va. 2002), and cites *Sampson*. Similarly, *Montgomery Cnty. Assn' of Realtors*, only says that economic damages are insufficient to establish irreparable harm "because such injuries can be compensated for monetarily"—which is not true here. 783 F. Supp. 952, 958 (D. Md. 1992).

[3] As to the government's attempt to distinguish *Mountain Valley* as involving a preliminary injunction rather than a TRO, the Fourth Circuit has made clear that similar legal standards

BOEM's Order inexplicably imposing immediate, enormous, and unrecoverable costs on DEV, and in turn its ratepaying customers across Virginia, supports prompt issuance of a TRO.

## II. THE MERITS OF DEV'S CLAIMS WARRANT A TRO.

DEV clearly and sufficiently demonstrated it is likely to succeed on its Administrative Procedure Act (APA) and Outer Continental Shelf Lands Act (OCSLA) claims, including because the BOEM Order is procedurally deficient, arbitrary and capricious, and contrary to governing law, lease, and approval terms. BOEM's response rests on a central, and misguided, proposition that all it must do to issue—and defer a defense of—its Order is to aver "national security" and "classified" information that is "new." Not so.

To be clear, DEV in no way countenances threats to national security or devalues such concerns in decision-making. National security is a guiding priority for DEV, given its responsibility for powering key military facilities and infrastructure and its long history of successful coordination with federal and state defense partners. H.A. ¶ 7. Indeed, that is precisely why DEV has proactively engaged for more than a decade with BOEM, the Department of Defense, Navy, Coast Guard, and other regulatory bodies specifically to identify, study, and mitigate any national security concerns even possibly related to CVOW. H.A. ¶¶ 28-32, Ex. A. While constructing CVOW, DEV has continued to meet regularly with BOEM and other agencies on various issues, and stands ready to further engage constructively regarding any concerns that may arise.

BOEM, however, cannot summarily assert "national security" to seize unfettered discretion or sidestep the requirements of the APA and OCSLA for suspending CVOW work

---

govern both of those remedies. *U.S. Dept. of Labor v. Wolf Run Mining Co., Inc.*, 452 F.3d 275, 281 n.1. (4th Cir. 2006) (TRO is distinguished "only by its duration"); *Ciena Corp v. Jarrard*, 203 F.3d 312, 319-20 (4th Cir. 2000) (discussing "fluid" relationship between those remedies).

offshore.  This Court has recognized that it need not blindly accept an agency's say-so, even on national security.  *Aziz v. Trump*, 234 F. Supp. 3d 724, 734 (E.D. Va. 2017) (courts may "look behind [the agency action's] proffered national security rationale"); *U.S. v. Rosen*, 487 F. Supp. 2d 703 717-18 (E.D. Va. 2007) ("While it is true, as an abstract proposition, that the government's interest in protecting classified information can be a qualifying compelling and overriding interest, it is also true that the government must make a specific showing of harm to national security in specific cases to carry its burden in this regard.  The government's *ipse dixit* that information is damaging to national security is not sufficient to close the courtroom doors …."). Also, "historical context" can heighten the Court's inquiry.  *Aziz*, 234 F. Supp. 3d at 734. For example, in *Aziz*, "the 'specific sequence of events' leading to the adoption of the [agency action] bolsters the [plaintiff's] argument that the [action] was not motivated by rational national security concerns."  *Id.* at 736.  There, the government "ha[d] not … produced any evidence, beyond the text of the [action] itself, to support their contention that the [action] was primarily motivated by national security concerns" and "there is no evidence that such a deliberative process took place."  *Id.*

So too here.  BOEM's opposition and declaration, like its Order, lack any detail on the nature of its "new classified information" or associated "national security" concerns.[4]  *See* Opp. 3, 11; ECF No. 19-1 ¶ 15 (Giacona Decl.).  BOEM's bald statement (also in its Order) of "rapid

---

[4] Nor could BOEM or its counsel bolster the Order post hoc via litigation filings.  *Michigan v. EPA,* 576 U.S. 743, 758 (2015) (it is a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action"); *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("courts may not accept appellate counsel's post hoc rationalizations for agency action"); *Revolution Wind v. Burgum*, No. 25-cv-02999-RCL, at 41 (preliminary injunction hearing transcript) (Sept. 22, 2025) (rejecting "additional reasons" government proffered during litigation for offshore wind project stop-work order "because they were not offered at the time that BOEM issued the order").

evolution of relevant adversarial technologies and the resulting direct impacts to national security from offshore wind projects" is devoid of any meaning as to the source, nature, or effect of any threat. Opp. 4, 11; Giacona Decl. ¶ 9. BOEM does not say which CVOW components under construction or operations purportedly pose such concerns or how they do so. BOEM does not say how the "new" information differs from agencies' extensive prior analyses, or who at the agency besides the Acting Director believed "BOEM had not considered [the risks]." Giacona Decl. ¶ 11. BOEM does not say that anyone other than its Acting Director "determined" that CVOW's "current mitigations" developed by a multi-disciplinary interagency team were inadequate or that only a directed suspension for CVOW was "feasibl[e]." *Id.* ¶¶ 12, 14. BOEM does not even say that the agency supplying the information to BOEM recommended a work stoppage. Any assertion that CVOW's location in Virginia drove the Order (*see id.* ¶ 9) is undercut by the fact that BOEM sent same-day similar orders to each offshore wind project under active construction.[5] Nor does BOEM square its claimed exigency underlying its CVOW Order with its carve-out for wind turbines already generating power.[6] Coupled with this black box, the Administration's concurrent anti-wind actions and statements suggest the Order's stated national security basis is pretextual and arbitrary. *See, e.g.*, ECF 11-1 at 12-13.

BOEM repeatedly urges the Court to "defer" any emergency relief because BOEM relied

---

[5] *See* https://www.doi.gov/pressreleases/trump-administration-protects-us-national-security-pausing-offshore-wind-leases (Press Release). In addition, CVOW is 27 miles offshore in federal waters. H.A. ¶ 8. Virginia state waters end at three miles offshore. *See* 4 Va. Admin. Code § 20-752-20.

[6] Offshore wind project with operating turbines unaffected by BOEM's December 22 orders, and thus presumably posing no national security threat, include the CVOW pilot project (https://coastalvawind.com/about/the-project), Vineyard Wind I (https://www.boem.gov/renewable-energy/state-activities/vineyard-wind-1), South Fork Wind (https://www.boem.gov/renewable-energy/state-activities/south-fork), and Block Island Wind (https://www.doi.gov/news/pressreleases/interior-offers-first-right-of-way-for-renewable-energy-transmission-in-federal-waters)."

on "classified" information (*e.g.*, Opp. 1), but BOEM is no more entitled to a free pass on the timing than on the substance of its defense on national security grounds. As discussed, the government's classification is not dispositive. *See Rosen*, 487 F. Supp. 2d at 717 ("Moreover, the government's *ipse dixit* is insufficient whether it appears by way of classified status, or the bald assertion of counsel that information is damaging to national security."). Even accepting the designation *arguendo*, the government has well-established procedures for proper sharing of classified information with courts and parties in litigation. 28 C.F.R. §§ 17.17, 17.46 (presumably the "necessary procedures" BOEM references in passing, Opp. 13). BOEM also has no answer as to why it bypassed all of DEV's executives and staff with clearances to review "secret" (as invoked here, Giacona Decl. ¶ 3) and even more restrictive (e.g., "top secret") information. H.A. ¶ 32; *see* Exec. Order No. 13526 (2009). It also has failed to justify why it cannot provide even the Court any relevant information for days or weeks. Indeed, BOEM has represented that it received and relied upon a complete or substantially complete "assessment" for its Order in "November 2025." Giacona Decl. ¶ 9, 15. That referenced document must be provided to the Court and to DEV immediately to permit the Court to assess, and DEV to further respond to, the government's otherwise unsupported (and likely unfounded) claims. To the extent that the Department of Justice attorneys initially assigned to this case lack sufficient security clearances, other government attorneys certainly have them. What the government cannot do is strategically time the draconian Order to issue three days before Christmas, a month after receiving its allegedly new information, then use the holiday period to insulate information from disclosure to the Court, and then insist that the Court not issue a TRO absent consideration of withheld information.

If the referenced national security concern were as urgent as BOEM claims, BOEM

7

presumably would have shared that information promptly with DEV upon receipt, and would have made agency staff available immediately to the Court to resolve the emergency that BOEM has itself created. Yet BOEM provides no suggestion of what type of risk could justify immediate suspension of construction of CVOW that is still months from full commissioning and operation. BOEM's strategic issuance of its Order just before the holidays, and purported inability to defend that order to the Court, undermine the credibility of BOEM's asserted concerns and fail to constitute reasoned and prompt decision-making that the APA requires.

BOEM's other response arguments on the merits are similarly unavailing. *First*, DEV never claimed that national security is an invalid ground for any suspension; rather, suspensions for national security are subject to preconditions and procedures, which BOEM undisputedly did not follow. Opp. 9.

*Second*, BOEM points to no statutory, regulatory, or lease provision justifying the Order here. *Id.* BOEM has already determined that CVOW satisfied 43 U.S.C. § 1337(p)(4)(F), and that provision does not authorize BOEM to freely revisit the CVOW lease or COP approval.[7] Further, 43 U.S.C. § 1337(p)(5) only provides generally for lease-related actions including suspensions, which remain subject to more specific statutory provisions for national security (like 43 U.S.C. § 1341(c)) and CVOW lease and COP approval terms. *See, e.g.*, *Nansemond Indian Nation v. Virginia,* 795 F. Supp. 3d 733, 764 (E.D. Va. 2025) ("[a] commonplace of statutory construction [is] that the specific governs the general") (citation omitted). Similarly, 43 U.S.C. §§ 1334(a)(1)(B) and (a)(2) do not apply as they exclude national security-based suspensions and the Order does not cancel the CVOW lease.

---

[7] *See* BOEM CVOW Record of Decision, Appendix B, at 19-20, https://www.boem.gov/renewable-energy/state-activities/cvow-c-record-decision.

*Third,* BOEM's suggestion that it has not changed positions on CVOW and need not consider any reliance interests is specious (Opp. 10). Of course, BOEM has changed positions, now purporting to pause its awarded CVOW lease and COP approval—and BOEM did so predicated wholly on one person's determination that wholly unspecified and unprovided information BOEM received a month earlier somehow presented a sudden emergency necessitating a stoppage of lease activities. *Fourth*, BOEM's disavowal of Executive Orders inconsistent with its Order contradicts its reliance on a Presidential Memorandum to issue its Order. *Cf.* Opp. 3, 11. *Finally*, this lawsuit raises no claim of "breach" of the CVOW lease and seeks no money damages. Opp. 12. DEV has sufficiently demonstrated the merits of its claims to grant a TRO.

## III. THE REMAINING FACTORS WARRANT A TRO.

DEV also demonstrated the public interest in prompt resumption of CVOW construction offshore and the lack of harm to BOEM or to anyone else from maintaining that status quo. BOEM's only response is to rehash its summary dismissal of DEV's immediate harms and argument for more delay. Opp. 12-13. But BOEM points to no harm if CVOW continues construction while the Court considers a longer preliminary injunction. Its citation to *Winter v. Natural Resources Defense Council* is inapt because that case presented the opposite situation as here. 555 U.S. 7, 24 (2008) (citation omitted). There, environmental groups sued the Navy to stop the Navy from using certain sonar that the Navy—via classified and unclassified evidence—demonstrated was essential to defending the Nation. By contrast, DEV is not seeking to stop any agency from doing anything to protect national security. In fact, DEV has cooperated with the Clearinghouse and the Navy to ensure that CVOW remains consistent with military operations to meet national security requirements in its COP approval. Finally, as discussed *supra*, the government cannot evade scrutiny by claiming all relevant information is "classified"; it is

unreasonable for BOEM to effectuate severe harm under the guise of national security, and then to make no reasonable attempt to present the relevant information to the Court. And allowing construction to continue while a preliminary injunction is decided will not harm national security any more than BOEM's own month-long delay in acting on such information.

## CONCLUSION

For the reasons above and in its opening brief, DEV respectfully requests that this Court reconsider its December 28 Order, and proceed to issue a TRO suspending BOEM's Order and barring further actions by BOEM to enforce the Order, pending further order of this Court.

Dated: December 28, 2025  Respectfully submitted,

*/s/ Nessa Horewitch Coppinger*
NESSA HOREWITCH COPPINGER,
VA Bar No. 65566
JAMES M. AUSLANDER, *pro hac vice pending*
R. JUSTIN SMITH, *pro hac vice pending*
HILARY T. JACOBS, *pro hac vice pending*
JULIUS M. REDD, *pro hac vice pending*
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, D.C. 20036
Telephone: 202-789-6000
Fax: 202-789-6190
ncoppinger@bdlaw.com
jauslander@bdlaw.com
jsmith@bdlaw.com
hjacobs@bdlaw.com
jredd@bdlaw.com

*Counsel for Virginia Electric and Power Company, d/b/a Dominion Energy Virginia, and OSW Project LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on December 28, 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> */s/ Nessa Horewitch Coppinger*
> NESSA HOREWITCH COPPINGER,
> VA Bar No. 65566
> Beveridge & Diamond, P.C.
> 1900 N Street, NW, Suite 100
> Washington, D.C. 20036
> Telephone: 202-789-6000
> Fax: 202-789-6190
> ncoppinger@bdlaw.com
>
> *Counsel for Virginia Electric and Power Company, d/b/a Dominion Energy Virginia, and OSW Project LLC*