**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| VIRGINIA ELECTRIC AND POWER COMPANY, D/B/A DOMINION ENERGY VIRGINIA; OSW PROJECT LLC, <br>　　　　　Plaintiffs, <br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR; BUREAU OF OCEAN ENERGY MANAGEMENT; DOUGLAS BURGUM, Secretary of the Interior, in his official capacity; MATTHEW GIACONA, Acting Director, Bureau of Ocean Energy Management, in his official capacity, <br><br>　　　　Defendants. | Case No. 2:25-cv-00830-JKW-LRL |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Dominion Energy Virginia and OSW Project LLC (collectively, "DEV") respectfully submit this Notice of Supplemental Authority to bring to the Court's attention a new decision by the United States District Court for the District of Columbia in *Empire Leaseholder LLC v. Burgum*, No. 26-cv-00004 (CJN) (D.D.C. Jan. 15, 2026). In an oral ruling followed by a minute order (attached as Attachment A), that court granted a preliminary injunction against a BOEM suspension order to Empire Wind that was issued the same day as, and is nearly identical to, BOEM's Order to DEV at issue here. The court did so after reviewing the same classified information the government provided to the Court in this case. Attachment B is a transcript of the hearing including the oral ruling. This decision follows a separate judge's similar grant of a

1

preliminary injunction against a nearly identical BOEM suspension order to Revolution Wind, as discussed in DEV's Reply. *Revolution Wind, LLC v. Burgum*, No. 25-cv-02999-RCL (D.D.C. Sept. 4, 2025), Dkt. No. 63 (Jan. 12, 2025); *id.* Dkt. No. 65, at 40-46. While this Court will reach its own independent ruling here, DEV respectfully submits that this new ruling supports DEV's pending motion for a preliminary injunction.

Dated: January 15, 2026

Respectfully submitted,

*/s/ Nessa Horewitch Coppinger*
NESSA HOREWITCH COPPINGER
VA Bar No. 65566
JAMES M. AUSLANDER (*pro hac vice*)
R. JUSTIN SMITH (*pro hac vice pending*)
HILARY T. JACOBS (*pro hac vice*)
JULIUS M. REDD (*pro hac vice*)
TAYLOR N. FERRELL (*pro hac vice*)
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, D.C. 20036
Telephone: 202-789-6000
Fax: 202-789-6190
ncoppinger@bdlaw.com
jauslander@bdlaw.com
jsmith@bdlaw.com
hjacobs@bdlaw.com
jredd@bdlaw.com
tferrell@bdlaw.com

*Counsel for Virginia Electric and Power Company, d/b/a Dominion Energy Virginia, and OSW Project LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on January 15, 2026.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Nessa Horewitch Coppinger*
NESSA HOREWITCH COPPINGER
VA Bar No. 65566
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, D.C. 20036
Telephone: 202-789-6000
Fax: 202-789-6190
ncoppinger@bdlaw.com

*Counsel for Virginia Electric and Power Company, d/b/a Dominion Energy Virginia, and OSW Project LLC*

# Attachment A

TYPE-D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:26-cv-00004-CJN

EMPIRE LEASEHOLDER LLC et al v. BURGUM et al
Assigned to: Judge Carl J. Nichols
Related Cases: 1:25-cv-02214-CJN
               1:25-cv-02999-RCL
               1:26-cv-00071-CJN
Cause: 05:702 Administrative Procedure Act

Date Filed: 01/02/2026
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

| Date Filed | # | Docket Text |
|---|---|---|
| 01/15/2026 | | Minute Order and Entry for Proceedings held before Judge Carl J. Nichols: Preliminary Injunction resumed on 1/15/2026. 8 Motion for Preliminary Injunction and Stay; GRANTED for reasons stated on the record by the Court. Joint Proposed Expedited Summary Judgment Briefing Schedule due by 1/20/2026 Court Reporter: Lorraine Herman. (zcam) (Entered: 01/15/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/15/2026 13:12:16 | | |
| **PACER Login:** | Beveridge6166 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:26-cv-00004-CJN Start date: 1/15/2026 End date: 1/15/2026 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# Attachment B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EMPIRE LEASEHOLDER, LLC,              Civil Action
et al.,                              No. 1:26-004
      Plaintiffs,

    vs.                              Washington, DC
                                     January 15, 2026
DOUGLAS J. BURGUM, et al.,
      Defendants,

_____/     11:05 a.m.


TRANSCRIPT OF PRELIMINARY INJUNCTION
ORAL RULING − via telephone
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the Plaintiffs:**    **Ann Navaro**
                       **David Super**
                       **Taylor Stuart**
                       **Tyler Johnson**
                       BRACEWELL LLP
                       2001 M Street NW, Suite 900
                       Washington D.C., DC 20036

**For Plaintiff Equinar:**  **Paul Fulton**
                       **David McSweeney**

APPEARANCES CONT'D.:


**For the Defendants:**        **Shawn Flynn**
                               DoW-OGC
                               1600 Defense Pentagon
                               Washington, DC 20301-1600

                               **Adam Gustafson**
                               **Peter Torstensen**
                               **John K. Adams**
                               USDOJ - ENRD
                               950 Pennsylvania Ave. NW
                               Washington, DC 20530

                               **William Doffermyre**
                               **Christopher Danley**
                               US Department of Interior
                               1849 C Street NW
                               Washington, DC 20240



**Reported By:**               **Lorraine T. Herman, RPR, CRC**
                               Official Court Reporter
                               U.S. District & Bankruptcy Courts
                               333 Constitution Avenue NW
                               Washington, DC 20001



*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Your Honor, this is civil case year

3    2026-004, *Empire Leaseholder LLC and Empire Offshore Wind*

4    *LLC vs. Douglas J. Burgum, et al.*

5          David Super, Taylor Stuart, Ann Navaro, Tyler

6    Johnson, Paul Fulton and David McSweeney for the plaintiffs.

7          Peter Torstensen, John Adams, Christopher Danley,

8    Adam Gustafson and Shawn Flynn for the defense.

9          **THE COURT:**  Thank you, Ms. Moore.

10         As I mentioned yesterday, I took the preliminary

11   injunction motion under advisement, and I am now going to

12   issue my oral ruling with respect to it.

13         Plaintiffs, Empire Leaseholder LLC and Empire

14   Offshore Wind LLC, I will refer to them collectively as

15   Empire Wind, seek a preliminary injunction and stay pending

16   review enjoining the enforcement of a suspension order,

17   issued by the Bureau of Ocean Energy Management or BOEM, on

18   December 22nd, 2025, that requires the suspension of

19   construction on the Empire Wind project off the coast of

20   New York.

21         Because the sequence of events leading up to the

22   Suspension Order are not meaningfully in dispute, I will not

23   recite those facts here in great detail.  Still, I think it

24   is helpful to lay out some of the relevant events at least

25   briefly.

1    Empire Wind seeks to resume construction of an

2    offshore wind farm that will provide 2,070 megawatts of

3    power to New York.  The Project is being built in two

4    phases:  Empire Wind 1 and Empire Wind 2.

5    After several years of review and applications,

6    BOEM approved Empire Wind's construction and operations plan

7    in February 2024.  Construction on the onshore portion of

8    Empire Wind began in April of 2024 and offshore construction

9    commenced in June 2024.

10    In April 2025, BOEM issued a stop-work order that

11    required Empire Wind to halt construction to address

12    environmental analysis by the National Oceanic and

13    Atmospheric Administration.  A little over a month later,

14    BOEM permitted Empire Wind to resume construction.

15    In June 2025, Empire Wind began installing the

16    monopile foundation that will support the wind turbine

17    generators.  It finished installation of all 43 monopile

18    foundations in October 2025.

19    Empire Wind has also finished installing the

20    jacket foundation that will support the Project's offshore

21    substation a specialized vessel named the *Sleipnir* was on

22    its way to November 2025 to lift the topside onto the jacket

23    foundation.

24    On December 22nd, 2025, however, BOEM issued an

25    order directing Empire Wind to "suspend all ongoing

activities relating to the Empire Wind project on the Outer Continental Shelf for the next 90 days for reasons of national security."  The cite for that is ECF 8-1 at 2.

BOEM's suspension order stated that in November 2025, the Department of War had "completed an additional assessment regarding the national security implications of offshore wind projects and provided senior leadership at the Department of Interior with new classified information, including the rapid evolution of relevant adversary technologies and resulting direct impacts to national security from offshore wind projects." *Id.*

It explained that "based on BOEM's initial review of this classified information, the particularized harm posed by this project can only be feasibly averted by suspension of on-lease activities," also *Id.*  And it noted that "while BOEM and DoW endeavor to reach a determination on feasible mitigation measures within 90 days following the date of this letter, BOEM may further extend the 90-day suspension period based on the status of those discussions," also *Id.*

Emphasizing that it has already invested more than $4 billion into the Project, which is now approximately 60 percent complete, Empire Wind requests a preliminary injunction that would enjoin and stay the Suspension Order pending a final adjudication of the merits.

1          "A plaintiff seeking a preliminary injunction must

2     establish that he is likely to succeed on the merits; that

3     he is likely to suffer irreparable harm in the absence of

4     preliminary relief; and that an injunction is in the public

5     interest."  That's *Winter v. NRDC*, 555 U.S. 7 at 20, Supreme

6     Court decision 2008.

7          The last two factors merge where the government is

8     a party because "the government's interest is the public's

9     interest."  That's *Pursuing America's Greatness v. FEC* 831

10    F.3d 500 at 511, D.C. Circuit 2016.  The same standard

11    governs a request for a stay under the APA.  See *Cuomo vs.*

12    *U.S. Nuclear Regulatory Commission,* 772 F.2d 972 at 974,

13    D.C. Circuit 1985.

14         I will now discuss how each of the preliminary

15    injunction factors applies here.

16         Of note, I have reviewed in camera the

17    government's ex parte submission of classified information

18    in support of the Suspension Order.  That classified

19    information informs my decision about the relevant factors

20    but, for obvious reasons, I refrain from discussing it at

21    all here publicly.

22         I will start with irreparable harm.  Because

23    irreparable harm is the touchstone of preliminary injunctive

24    relief, Empire Wind's allegations of irreparable harm

25    necessarily inform the relief that I could conceivably order

1    at this time, it is helpful to begin the analysis with this

2    factor.

3         The standard of irreparable harm is "high." That

4    is *Chaplaincy of Fully Gospel Churches vs. England*, 454 F.3d

5    290 at 297, D.C. Circuit 2006.  The moving party must

6    establish that "the injury complained of is of such

7    imminence that there is a clear and present need for

8    equitable relief to prevent irreparable harm" and that the

9    injury is "beyond remediation*," Id.*

10        Empire Wind argues that the continued enforcement

11   of the Suspension Order places the entire project "at a

12   substantial risk of cancellation, posing an existential risk

13   to Empire Wind," that's ECF 8 at 37.

14        *Most immediately Empire Wind contends that it must*

15   *be able to resume construction January 16th, 2026, that is*

16   *tomorrow, because it will otherwise lose its access to the*

17   *Sleipnir* to install the offshore substation topside on the

18   jacket foundation.  Empire Wind projects that, upon the

19   presumption of construction it will take 10 days to repair

20   the *Sleipnir's* lift of the topside and the actual lift

21   itself will take four to six days to complete; that vessel

22   must leave Empire Wind 1 by February 1, 2026 to meet its

23   next contractural deadline.  Although at oral argument,

24   Empire Wind stated that it is working to see whether the

25   *Sleipnir* could stay around for a few extra days, if

1    necessary.  The *Sleipnir* will not be available for at least

2    another year once it leaves, and because of its specialized

3    nature, Theodore Mulfelder, a Vice President of Equinor

4    Wind, the parent company of Empire Wind, stated in his sworn

5    declaration that "there is a substantial risk that it would

6    not be available during any new construction window; and

7    that Empire Wind would not be able to identify and engage

8    replacement vessels to meet any new construction window."

9    That's his declaration, ECF 8-2 at 22.

10       Empire Wind explains its delays in its

11   "construction schedule will cause a ripple effect across the

12   overall schedule, impacting other vessel and supply

13   contracts that cannot be renegotiated or replaced, and

14   creating substantial risk to the Project's viability."

15   That's ECF 8 at 38.

16       As another example of the cascading effects of

17   additional delays, Empire Wind has contracted for another

18   vessel, *Crossway Eagle*, to hookup and commission the topside

19   between February and June 2026 following its lift onto the

20   foundation by the *Sleipnir*.  The timely completion of that

21   task would be put in severe jeopardy if the initial lift is

22   not made before then.  Further complicating things,

23   Mulfelder's sworn declaration states *Crossway Eagle* itself

24   is already booked for the next five years; and that it

25   "cannot readily be relaced by another vessel" which would

1   leave the Project unable to "produce electricity."  Again,

2   that's his declaration at 21.

3            Mulfelder's declaration also provides that Empire

4   Wind faces "an immediate financial emergency" because it is

5   currently unable to draw down on further financing.  *Id.* at

6   22-23.  Relatedly, Empire Wind's creditors could make the

7   $2.7 billion already paid immediately due if the Suspension

8   Order remains in place on February 22nd, 2026, which would

9   be the end of the 60-day secure period under the credit

10  agreement.

11           In light of these concerns, Mulfelder states, and

12  Empire Wind argues, that these harms "will likely result in

13  cancellation of the Project and pose an existential threat

14  to Empire Wind, which exists solely to construct and operate

15  the Project."  That's his declaration at 23.

16           The government tries to minimize Empire Wind's

17  allegations of irreparable harm by pointing out that "many

18  of its alleged harms are hedged in permissive language."

19  That's ECF 29 at 16.  And, at oral argument, the government

20  expressed doubt that such a large project would actually

21  shutter due to vessel unavailability.

22           But "Damocles's sword does not have to actually

23  fall on the movant before the court will issue an

24  injunction."  That's *League of Women Voters of the United*

25  *States vs. Newby* 838 F.3d 1, at 9, D.C. Circuit 2016.  After

1    all, the governing standard asks whether the movant

2    "demonstrates that irreparable injury is *likely* in the

3    absence of an injunction."  That's *Winter*, again, at

4    555 U.S. at 22.

5            Here, the obstacles created by the Suspension

6    Order "unquestionably make it more difficult for Empire Wind

7    to accomplish its primary mission" of constructing the

8    Project.  Again, I'm quoting, in part*, League of Women*

9    *Voters*, 838 F.3d at 9.

10           Empire Wind has established on this record that

11   losing access to specialized vessels that cannot be replaced

12   in time to meet binding deadlines, will not just cause

13   substantial financial loss, but it will threaten Empire

14   Wind's entire existence.  Empire Wind therefore meets the

15   Court of Appeals standard that "recoverable monetary loss

16   may constitute irreparable harm only where the loss

17   threatens the very existence of the movant's business."

18   That's Wisconsin Gas vs. FERC, 758 F.2d 669, at 674.  Again

19   D.C. Circuit 1985

20           For these reasons, in my view, Empire Wind has

21   established that it would suffer imminent irreparable harm

22   if the Suspension Order is not preliminarily enjoined.

23           I turn next to the likelihood of success on the

24   merits.  Empire Wind raises several merits arguments in

25   challenging the Suspension Order.  In particular, Empire

1   Wind offers three theories of why the Suspension Order is

2   arbitrary and capricious, a procedural argument about

3   inadequate notice, under Section 558 of the APA, three

4   arguments for why BOEM lacked statutory authority to issue

5   the Suspension Order on national security grounds, and a

6   contention that the Suspension Order violates the Due

7   Process Clause.  For its procedural claims, Empire Wind

8   emphasizes that it received no form of notice or an

9   opportunity to be heard before BOEM issued the Suspension

10  Order.

11          Despite Empire Wind having presented multiple

12  plausible claims, in its opposition brief, the government

13  responds only to the statutory authority arguments, arguing

14  that it had the authority to issue the Suspension Order

15  under Section 1337(p)(4) of the Outer Continental Shelf

16  Lands Act.  Its brief does not directly respond to Empire

17  Wind's contention that the suspension order was arbitrary

18  and capricious, lacked proper notice and violated due

19  process.

20          At oral argument, the government stated that it

21  did not concede these unaddressed arguments, instead it

22  asserted conclusorily that Empire Wind was wrong on the

23  merits of these claims, albeit without providing almost any

24  substantive explanation of why.  The government did

25  emphasize at argument, as its brief implied at lease, that

considering the merits was ultimately unnecessary based on what the Supreme Court said in *Winter* about the balance of the equities when national security is at issue.

Under Local Civil Rule 7(b) and precedent from the Court of Appeals, "if a party files an opposition to a motion and therefore addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."  That's *Wannal vs. Honeywell, Inc.*, 775 F.3d 425 at 428 at D.C. Circuit 2014.  The government's belated contesting of issues at oral argument in such a conclusory manner is insufficient to cure that deficiency.

See, for example, *United States vs. Southerland* 486 F.3d 1335 at 1360, D.C. Circuit 2007, concluding that in argument raised for the first time at oral argument is forfeited.  Also*, Power vs. Barnhart* 292 F.3d 781 at 787, note 5, that's D.C. Circuit 2002, "it is simply too late to raise in argument for the first time in oral argument.  And *Schneider vs. Kissinger*, 412 F.3d 190 at 200, Note 1, again D.C. Circuit, this one is 2005, "it is not enough to merely to mention a possible argument in the most skeletal way, leaving the Court to do counsel's work, create the ossature for the argument and put flesh on its bones."

The government's failure to address several of Empire Wind's arguments is dispositive on this factor here, because even if Empire Wind was wrong to contest that BOEM

had statutory authority to issue the Suspension Order, it can still, of course, contend that the suspension order is arbitrary and capricious or violated notice and due process requirements.  See, for example, *Animal Legal Defense Fund Inc. vs. Purdue*, 872 F.3d 602 at 619, D.C. Circuit at 2017, "the agency action may be consistent with the agency's authorizing statute and yet arbitrary and capricious under the APA."

In light of the lack of meaningful dispute regarding notice and due process, and given that the record appears to shows that BOEM did not give Empire Wind any form of process or an opportunity to be heard before issuing the Suspension Order, Empire Wind has established that it is likely to succeed on the merits of at least one of its unrebutted claims.

The final preliminary injunction factor requires me to weigh the hardship to Empire Wind if a preliminary injunction is not granted against the harm to the government if it is.

The government argues that this factor is dispositive in its favor because national security concerns are paramount.  It cites precedent, including the Superior Court's decision to vacate a preliminary injunction on national security grounds in *Winter*, emphasizing that courts are not in the province of second-guessing the national

1    security judgments of executive officials, and it contends

2    that "the classified information provides a reasonable basis

3    on which defines that, when it comes to operation of the

4    Project, the public interest and national security outweighs

5    Empire Wind's alleged economic harms."  That's ECF 29 at 20.

6         For its part, Empire Wind reiterates the

7    irreparable harm that it will suffer if the Suspension Order

8    remains in effect.  It further argues that there is a

9    "substantial public interest in having governmental agency

10   abide by the federal laws that govern their existence and

11   operations."  There it is quoting *League of Women Voters*,

12   838 F.3d at 12.  And it emphasizes that a preliminary

13   injunction would also align with the public interest in

14   ensuring a predictable permitting process and by supporting

15   thousands of jobs connected to construction of the project.

16        The government's point that national security

17   weighs heavily when balancing the equities is well-taken,

18   but the government overreads *Winter*, which is distinct from

19   this dispute in several ways.  As a threshold matter*, Winter*

20   itself made clear that "military interests do not always

21   trump other considerations."  That's 555 U.S. at 26.

22        Moving to the specific interest at issue in that

23   case, the Supreme Court emphasized that the plaintiffs'

24   potential injury there, which would at most be "harm to

25   unknown number of the marine mammals that they study and

observe" was "plainly outweighed" by the government's injury, which would "force the Navy to deploy an inadequately trained antisubmarine force that jeopardizes the safety of the fleet."

Here, in contrast, Empire Wind's interest is much stronger than the *Winter* plaintiffs' interests, for all of the reasons already discussed regarding irreparable harm, while the government's interest is weaker and less concrete than it was in *Winter* when considering the activities that will occur at the Project during the limited time where a preliminary injunction would have affect while the parties are briefing the merits and I am deciding the merits on an expedited basis.

Giving deference to the government's determination of national security concerns and taking the classified information on its own terms, the record before the Court does not currently establish that the balance of the harms resulting from a preliminary injunction that merely prevents enforcement of the Suspension Order until a decision is reached on the merits on an expedited basis outweighs the irreparable harm that Empire Wind will likely suffer in the interim.  Rather, the harms resulting from suspension during this stage of the Project, which threatened the very existence of Empire Wind, outweigh the harms articulated by the government during this period of project construction.

1    For all these reasons, I conclude that Empire Wind

2   has demonstrated that it will suffer irreparable harm absent

3   a preliminary injunction, that its claims are likely to

4   succeed on the merits, and that the balance of the equities

5   and public interest favors a preliminary injunction.

6   Accordingly, it is ordered that Empire Wind's motion for

7   preliminary injunction, ECF 8, is granted.

8    It is further ordered that the suspension order

9   issued by Acting Director Matthew Giacona to Empire Wind on

10   December 22nd 2025, is hereby enjoined pending a final

11   adjudication of the merits of Empire Wind's Complaint and

12   claims, which I intend to take up on an expedited basis, and

13   during that period, defendants are enjoined from taking

14   actions to implement or enforce that Suspension Order.

15    And it is further ordered that the Suspension

16   Order is stayed pending review pursuant to Section 705 of

17   the Administrative Procedure Act.

18    And it is further ordered that the parties shall

19   file a joint proposed expedited summary judgment briefing

20   schedule on or before January 20th, 2026.

21    That is my decision today.  Obviously that last

22   part is a direction to the parties.

23    I had contemplated having a discussion here today

24   about an appropriate expedited briefing schedule, but in my

25   view, the parties should, in the first instance, have that

1    conversation and then propose something to me on Monday.  So

2    I am contemplating there, and just to explain a little bit

3    more what I am ordering on that last point, I want the

4    parties to meet and confer and to propose to me no later

5    than Tuesday, January 20th, 2026, a joint proposed expedited

6    summary judgment briefing schedule.

7              In the event the parties cannot agree on some or

8    all of such a schedule, they should include in that joint

9    submission their respective views on the various disputes.

10   Okay?

11             Any questions about my decision or what I've

12   directed the parties to do by Tuesday, from the plaintiffs'

13   side, Ms. Navaro?

14        **MS. NAVARO:**  No, Your Honor.  We have no

15   questions.  This is Ann Navaro.  I'm sorry for the court

16   reporter.  Thank you very much.

17        **THE COURT:**  Okay.  Does the government have any

18   questions that it would like to ask of what I have required

19   the parties to do by Tuesday?

20        **MR.  TORSTENSEN:**  No, Your Honor.

21             This is Mr. Torstensen.  We don't have any

22   questions.

23        **THE COURT:**  Okay.  Thank you-all.  We look forward

24   to your submissions on Tuesday.  And, of course, in the

25   event that the parties meet and confer in advance of that

1    and reach agreement or at least have staked out their

2    positions and wish to propose something before then or file

3    something before then, they may do so.  Just in no event

4    would I like something later than Tuesday.  Okay?

5              Thank you-all.

6         (Proceedings concluded at 11:28 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4   certify that the foregoing is a true and correct transcript

5   of the record of proceedings in the above-entitled matter.

6

7

8          **Please Note:**  This hearing occurred remotely and

9   is therefore subject to the technological limitations of

10  court reporting remotely.

11

12

13

14
        January 15, 2026              /s/ Lorraine T. Herman
15           **DATE**                         **REPORTED BY**

16

17

18

19

20

21

22

23

24

25